**Richard JOHNSON, Appellant,**

v.

**Rena T. AUSTIN, Guardian of Virgle Johnson, minor, Appellee.**

**No. 2556.**

Municipal Court of Appeals for the District of Columbia.

Argued May 9, 1960.

Decided June 28, 1960.

---

Goldie S. Paregol, Washington, D. C., with whom Sanford A. Witkowski, Washington, D. C., was on the brief, for appellant.

Margaret A. Haywood, Washington, D. C., for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

ROVER, Chief Judge.

This is an appeal from an order of the Domestic Relations Branch of the Municipal Court entered after a hearing on a petition for a writ of habeas corpus. By its order the court transferred custody of a minor female child from the natural father, appellant, to the maternal grandmother, appellee. The father appeals.

The facts are that after the mother's death the father took his child and went to live with his sister. On May 20, 1958, upon application to the United States District

Court holding Probate Court, he was appointed legal guardian of the estate of his child. The grandmother contested his appointment before that court attacking his fitness to serve in such a capacity; but on July 21, 1958, the Probate Court dismissed her motion for reconsideration of the May 20 order, and thus reaffirmed the father's right to serve as guardian.

It later developed that the father unlawfully disbursed funds from the child's estate, which had been placed in his trust as the child's distributive share upon settlement of the wrongful death claim brought by the administrator of the deceased mother's estate. The grandmother thereupon petitioned the Probate Court to have the father show cause why he should not be removed as the guardian of his child's estate due to the unauthorized disbursements.

On February 11, 1959, at the hearing on the rule to show cause, the Probate Court removed him as guardian for wasting the child's assets, and appointed the grandmother as successor guardian. However, the difficulty begins here, for the order of that court removed the father as "guardian of the minor's estate" and appointed the grandmother as "successor guardian *of the person* and estate" of the minor. (Emphasis supplied.) She then petitioned the Domestic Relations Branch of the Municipal Court for a writ of habeas corpus to force compliance with the order of the Probate Court, contending that the Branch was the only court in the District of Columbia empowered to enforce custody decrees.[1] At the hearing on the writ the Domestic Relations judge, in ordering that physical cus-

tody be given to the grandmother, stated: "[T]he only thing that I have to decide is that the District Court of the United States has decided that this woman has custody of the person, and property of the minor child, and there is nothing more I can do about it."

■ Several errors are assigned by the father on appeal, but we need discuss only one in reversing the order of the Domestic Relations Branch. He contends, and we agree, that the Domestic Relations Branch of the Municipal Court is bound by but does not have jurisdiction to specifically enforce custody orders of the United States District Court holding Probate Court.

We will begin by first commenting on what we think the authority of the Probate Court is in this type of proceeding. It should be noted at the outset that we do not make these comments as an attempt to define the jurisdiction of that court, for that is not our duty and it would be presumptuous for this court to assume it; still, some remarks on that point must be made in view of the grandmother's claim that the Probate Court lacks the power to enforce its own custody decrees.

■ The Probate Court undoubtedly has jurisdiction to grant custody of minors in guardianship cases, and whether that jurisdiction attached to this case was for that court to decide.[2] Once having assumed jurisdiction over the parties, that jurisdiction continued for all purposes, and if either party felt aggrieved by the orders of the court his remedy lay with that court or on appeal therefrom. We cannot agree

1. Code 1951, § 11–762 (Supp. VIII) provides that: "The Domestic Relations Branch * * * shall have exclusive jurisdiction over all * * * actions seeking custody of minor children"; and § 11–763 (Supp. VIII) gives the Branch that power "necessary to effectuate the purposes of this chapter, including but not limited to * * * writs of habeas corpus * * *."

2. Code 1951, § 21–103 provides that: "If any infant shall have neither natural nor

testamentary guardian, a guardian of the person may be appointed by the probate court in its own discretion * * *." There is some dispute whether appellant is actually the natural father of the child. The record is devoid of any of the facts or circumstances which may have induced the Probate Court to enter the order in question, but it is evident that the very allegation of nonpaternity forced the court to exercise its discretion, hence its jurisdiction.

with the grandmother's argument that the Probate Court's jurisdiction stopped short of enforcing its own decrees, for the Code provisions indicate just the contrary is true.[3] The nature of that court's jurisdiction being limited in some respects should not be construed as denying it the power to enforce its own valid custody orders.[4] Admittedly, in some cases, perhaps even in the instant case, recourse to the District Court may be necessary to effectuate the decrees of the Probate Court; nevertheless, the Probate Court is but an arm of the District Court and the full judicial machinery of the District Court should be available to enforce the lawful decrees of its component parts. Thus, if the Probate Court is thought to be powerless to enforce a custody decree, other avenues are open in the District Court to give litigants just the type of relief which the grandmother claims to be vested exclusively in the Domestic Relations Branch.[5]

We need cite but one case to indicate the weakness of her position. Bell v. Leonard, 102 U.S.App.D.C. 179, 251 F.2d 890, was a case wherein the District Court's disposition of a custody dispute was reviewed by the United States Court of Appeals. In passing on the issues in that case no mention was made nor any doubt raised as to the propriety of the District Court entertaining a writ of habeas corpus at the instance of a mother as natural guardian of the child. It is true this case did not begin in the Probate Court, and it is therefore not exactly in point with the question presented here. But that makes it an even stronger case to support our view; for if the parties in that case could seek adjudication and enforcement of custody de novo in the District Court, entirely by-passing the Domestic Relations Branch, then where custody has already been validly determined—as the grandmother admits—in the Probate Court, the District Court has a firmer basis on which to retain jurisdiction to enforce that order. The Bell case arose subsequent to the passage of the Domestic Relations Act, and we think it is ample evidence that the Domestic Relations Branch has not been given full and final jurisdiction to enforce all custody orders that are validly issued in the District of Columbia.

If the foregoing is not a correct statement concerning the power of the Probate Court to enforce its own decrees, or even of the District Court to aid in that enforcement, still it is for those courts to so state, and not for the parties to pre-empt that power by not testing it initially before those courts and trying to bring themselves into the jurisdiction of the Domestic Relations Branch of the Municipal Court.

■ Whatever our feelings are as to the jurisdiction of the District Court or Probate Court, the question still remains whether the Domestic Relations Act can be construed as giving the Domestic Relations Branch concurrent jurisdiction to enforce lawful custody decrees no matter from what source they may spring. We think that question must be answered in the negative. The Domestic Relations Branch, while not specifically categorized as such, is itself a court of limited jurisdiction. Its powers of enforcement, for instance, are limited to that which is "necessary to effectuate the purposes of this [domestic relations] chapter." Code 1951, § 11–763 (Supp. VIII). Where child custody is concerned, there may be but a thin line dividing guardianship proceedings from domestic relations

---

3. Code 1951, § 11–516. "The said [Probate] court, in addition to the powers herein specially conferred, shall have power to enforce its judgments, orders, and decrees in like manner as orders and decrees may be enforced in the equity court."

4. See Code 1951, § 11–512.

5. Code 1951, § 16–808. "Any person entitled to the custody of another person, unlawfully confined or detained by a third person, as a parent [or] guardian, * * * entitled to the custody of a minor child, * * * upon application to the [District] court, or a justice as aforesaid, and showing just cause therefor, under oath, shall be entitled to a writ of habeas corpus * * *."

proceedings, but a distinction does exist. This distinction is initially set forth in the Code where jurisdiction over guardianship matters is given to the Probate Court,[6] while domestic relations jurisdiction is vested in the Domestic Relations Branch.[7] When the custody of a child is in issue in either court, that court has power to make a determination of the question, presumably with a view to the best interests and welfare of the child. But the similarity of the proceedings in such a situation should not be allowed to obscure from whence the jurisdiction springs, and guardianship decrees cannot be brought before the Domestic Relations Branch in the guise of domestic relations problems that are settled in all respects save only for their enforcement.

There may arise in the future a domestic relations case whereby the Branch has before it collaterally, as part of the evidence, an outstanding custody order of differing nature and from another court. To the extent that circumstances had not changed, the Domestic Relations Branch would likely be bound by that order. But that is not the same as bringing a guardianship decree before the Branch and asking for no more than its enforcement.

The court felt powerless to go behind the order of the Probate Court, and properly so; but for the reasons expressed in this opinion it is our conclusion that the court should not have assumed jurisdiction at all and should have refused to issue the writ of habeas corpus.

The posture of this controversy is that if the father has surrendered custody to the grandmother, he may petition the Probate Court to vacate its order appointing the latter guardian of the person, or proceed under the general jurisdiction of the District Court pursuant to Code 1951, § 16–808. If the father still has physical custody of the child, then the grandmother may proceed in the Probate Court under Code 1951, § 11–516, or petition for a writ of habeas corpus under § 16–808.

Reversed with instructions to quash the writ of habeas corpus and dismiss the petition on the ground of lack of jurisdiction.