**UNITED STATES of America,**
**Plaintiff-Appellee,**

**v.**

**Barry David KAYE, Defendant-Appellant.**

**No. 73-1723.**

United States Court of Appeals, Sixth Circuit.

Argued Dec. 12, 1973.

Decided Feb. 27, 1974.

---

David W. Fais, Columbus, Ohio (Court-appointed), for defendant-appellant.

Robert D. Zitko, Columbus, Ohio, for plaintiff-appellee. William W. Milligan, U. S. Atty., Curtis Griffith, Jr., Special Asst. U. S. Atty., Drug Enforcement Administration Task Force, Columbus, Ohio, on brief.

Before EDWARDS, CELEBREZZE and MILLER, Circuit Judges.

PER CURIAM.

Appellant was convicted of possession of cocaine, in violation of 21 U.S.C. § 841(a)(1).

On June 23, 1972, agents from the Office for Drug Abuse Law Enforcement at Columbus, Ohio, received information from an informant whose reliability had not been established that a quantity of cocaine could be purchased from an individual named "Barry" who would arrive at Port Columbus International Airport on a Delta Airlines flight at approximately 9:20 P.M., that evening.

That evening the agents proceeded to Port Columbus International Airport, accompanied by the informant, who was to introduce Officer Jack Mignosi (who was to use the assumed name of Joe Verollo) to "Barry." Officer Mignosi was furnished with four thousand dollars ($4,000) of "buy money." It was agreed that Officer Mignosi would signal to the other agents by putting on his coat if at any time during the transaction, he: 1) had made a purchase; 2) ascertained that "Barry" had the cocaine; or 3) was himself in danger.

Appellant and Thomas Eisaman disembarked from the plane and they were introduced by the informant to "Joe Verollo" (Officer Mignosi). All four proceeded to the luggage carousel. During this time Officer Mignosi asked Appellant if he "had it." Mignosi testified that Appellant responded, "yes, six and a half ounces," while Eisaman and the informer testified that Appellant replied negatively. Appellant then showed Mignosi $1,600, and Mignosi showed Kaye $4,000. Upon seeing the $4,000, Kaye entered into the following dialogue with Mignosi, according to Mignosi's testimony:

Kaye: "Wow."

Mignosi: "It is going to be yours anyway."

Kaye: "Right. When we get done with business, I can take you to Florida and get two kelos (sic)."

Mignosi: "Sounds good."

Subsequent to this, Mr. Eisaman pointed out Detective Wasem and identified him as "a cop." At this time, both Appellant and Eisaman retrieved their luggage, and began to walk quickly toward the door. As Kaye and Eisaman picked up their luggage, Mignosi asked Kaye if he was stupid enough to put the dope in his suitcase, and Kaye "said not to worry about it, that he had it." At approximately this point, Kaye told Mignosi: "If we are busted, run and we will meet later," and Mignosi put his coat on as a signal to the other agents. The walk became a full run, and Appellant Kaye and

Eisaman were stopped just outside the main door to the airport by Special Agent Harry Hensel. At the time he was stopped, Kaye was swinging his suitcase in mid-air to keep people away.

Immediately after stopping Kaye and Eisaman, Agent Hensel took custody of the suitcase carried by Appellant, and both Kaye and Eisaman were taken just inside the main door of the airport, into the Airport Security Office, where they were advised of their rights, and advised that they were under arrest. At this time, Agent Hensel, in the Security Office, opened Kaye's unlocked suitcase and found therein a white powder, stipulated at trial as being five and one-half ounces of cocaine.

■ The sole issue before us is whether the opening of Appellant's suitcase without a warrant constituted an unlawful search. We are presented with a search made subsequent to a valid arrest. Incident to making a lawful custodial arrest, a full search of the person may be made without a warrant. United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

. ■■ Our question is whether that search may extend to the suitcase Appellant was carrying with him. We find that it can. A search incident to arrest may extend to "the arrestee's person and the area 'within his immediate control' —construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969). Appellant's suitcase was within that area at the time of his arrest. It is true, as Appellant contends, that Appellant had been subdued and presented no danger to the police at the time the suitcase was opened. Nor was there the possibility that the evidence in the suitcase would be destroyed as the suitcase was under the control of the police. However, the authority to conduct a search incident to an arrest, once established, still exists even after the need to disarm and prevent the destruction of evidence have been dispelled.

> "The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." United States v. Robinson, 414 U.S. 218, 235, 94 S.Ct. 467, 477, 38 L.Ed.2d 427 (1973).

We hold, therefore, that the search of Appellant's suitcase was lawfully conducted incident to his arrest. *See* United States v. Burch, 471 F.2d 1314 (6th Cir. 1973). The judgment of the District Court is affirmed.

EDWARDS, Circuit Judge (concurring).

If I considered the constitutionality of the warrantless search of appellant's suitcase to be open for our review, I would find it a difficult problem. *See* United States v. Mehciz, 437 F.2d 145, 150 (9th Cir. 1971) (Ely, J., dissenting). Since, however, Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); United States v Mehciz, 437 F.2d 145 (9th Cir. 1971), and United States v. Burch, 471 F.2d 1314 (6th Cir. 1973), all directly point to affirmance, to say nothing of a recent Supreme Court decision in United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), I concur.